IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT HARRISON FRANK et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:22-cv-01757-M |
| TAMIRIS V. FRANK, et al., | § § § | |
| Defendants. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 41) and Plaintiffs' Motion for Summary Judgment (ECF No. 44). On December 5, 2023, the Court heard argument on the Motions.

This is a declaratory judgment case arising out of a family trust agreement. Plaintiffs Robert Harrison Frank and Geanne Frank seek declarations relating to their authority and potential liabilities as co-trustees for the Tamiris V. Frank Exempt Trust, the Norman Daniel Frank III Exempt Trust, and the [ASF] Exempt Trust (collectively, "Exempt Trusts"). Defendants are Tamiris V. Frank, Norman Daniel Frank, III, and Anara Frank, individually, and as next friend to her minor daughter, ASF.

For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss, and does not reach Plaintiffs' Motion for Summary Judgment.

**I.   BACKGROUND**

On April 22, 2009, Norman Daniel Frank II ("Dan"), as Settlor and Trustee, created the Norman Daniel Frank II Family Trust ("Family Trust"). Sec. Am. Compl. (ECF No. 22) ¶ 9; *see*

1

*generally* ECF No. 22-1 ("Trust Agreement"). At the time, Dan was married to Defendant Anara Esim Frank, and they had three children: Defendants Tamiris Frank, Norman Daniel Frank III, and [ASF]. Trust Agreement ¶¶ 1.1(a), 1.4. The Trust Agreement provides that Dan's funds, securities, and properties would constitute the trust estate, and be administered under the terms of the Trust Agreement for the benefit of the Dan's three children, the "Beneficiaries." *Id.* ¶ 1.1–.2. The Trust Agreement provides that a qualified domestic trust shall be created for Dan's wife if she survives him, and shall include the homestead residence of Dan's wife, for which "[t]he Trustee shall be responsible to pay from the Trust the upkeep, maintenance, taxes, insurance and mortgage on." *Id.* ¶ 5.2.

The Trust Agreement further provides that exempt trusts shall be created for each Beneficiary, and that the Trustee shall be authorized to make distributions to the Beneficiaries as follows:

> As long as the Beneficiary is residing in the United States, the Trustee shall be authorized to distribute to the Beneficiary so much of the net income, principal, or both from the Trust as will, in the Trustee's judgment, provide for the health, education, maintenance and support of the Beneficiary taking into account to the extent the Trustee determines, other income known by the Trustee to be reasonably available to the Beneficiary and taking into account the statutory obligation of the living parent of any minor beneficiary to support such Beneficiary.

*Id.* ¶¶ 6.1–.2.

In addition, the Trust Agreement provides a life estate to Tina, Dan's ex-wife, in the residence located at 818 Fairway Drive, in Mission, Texas ("Fairway Residence"), for which "costs associated with such residence such as property taxes, casualty insurance, maintenance, repairs and upkeep and/or replacement of tangible personal property and landscaping" shall be paid for from nonexempt trusts in existence, and if none in existence, shall by born pro rata by the exempt trusts. *Id.* ¶ 3.1(d).

Dan died in February 2010, while married to Anara Frank. At the time of Dan's death, Anara, Dan, and their three children lived at 1307 San Felipe Drive in Mission, Texas ("San Felipe Residence"). Pursuant to the Trust Agreement's terms, Dan's siblings—Plaintiffs Robert Frank and Geanne Frank—became Co-Trustees, and Robert was appointed executor of Dan's estate. In 2013, Anara filed suit against Plaintiffs, in their capacities as Co-Trustees, in Hidalgo County, Texas (where Mission is located), alleging that Plaintiffs had not funded a qualified domestic trust for Anara, made an accounting required by law, or paid certain costs and expenses of the Family Trust.

In 2016, Plaintiffs and Anara entered into a Settlement Agreement and Mutual Release to resolve the lawsuit. *See* ECF No. 43 at 42–59 ("Settlement Agreement"). The Settlement Agreement provided that, within a reasonable time, the Family Trust would be divided into three separate and equal exempt trusts for each of the Beneficiaries, the "Exempt Trusts"; until September 15, 2017, Anara would be paid $6,000 monthly from the Family Trust (or $2k per month from each Exempt Trust, after their creation), to provide for health, education, and maintenance and support of the three Beneficiaries; and after September 15, 2017, the Co-Trustees would retain the right to reassess the monthly distributions to each Beneficiary and whether such amount should be changed, "within the reasonable discretion of the Trustees and the requirement contained in the Trust Agreement that the Trustees must consider Anara's statutory duty of support under the Texas Family Code in determining the appropriate amount to distribute for each child." Settlement Agreement ¶¶ 2–3.

In addition, the Settlement Agreement provides that the Co-Trustees are not required to fund a qualified domestic trust for Anara or transfer the San Felipe Residence into such a qualified domestic trust, but the Residence "will be co-owned in equal shares by the three (3) Exempt

Trusts," and "Anara shall have the right to reside rent free in the Residence during her lifetime."

*Id.* ¶¶ 8–9. The Settlement Agreement contains the following provision regarding home repairs:

> <u>Home Repairs and Expenses</u>. Anara shall promptly notify the Trustees of any repairs that are needed to the Residence. Anara agrees to cooperate reasonably at all times and sign all necessary papers to submit and process any insurance claims before repairs are made, except in the case of emergencies, and, except in the case of emergencies, shall get approval of the Trustees for any repairs for which payment or reimbursement is sought, which shall be made reasonably promptly. The Trustees agree not to unreasonably withhold consent. The "Residence" as used in this Agreement means the real property located at 1307 San Felipe, Mission, Texas where Anara and the children reside.

*Id.* ¶ 5.

The Settlement Agreement contains an agreement to mediate "any dispute [that] arises with regard to the interpretation and/or performance of this Agreement or any of its provisions" with the same mediator who facilitated the Settlement. *Id.* ¶ 22.

On August 11, 2022, Plaintiffs, in their capacities as Co-Trustees for the three Exempt Trusts, filed this lawsuit. In the live pleading, the Second Amended Complaint, Plaintiffs seek declarations under 28 U.S.C. § 2201 relating to the Fairway Residence, the San Felipe Residence, and distributions to Beneficiaries.

Regarding the Fairway Residence, Plaintiffs allege they "seek a declaration that Tina has the right to reside in the Fairway Drive Residence for her lifetime, and the Trustees are authorized to make pro rata payments from the Trusts to pay the costs associated with such residence, including property taxes, casualty insurance, maintenance, repairs[,] upkeep and replacement of tangible personal property and landscaping." Second Am. Compl. ¶ 13.

Regarding the San Felipe Residence, Plaintiffs allege they "seek a declaration from the Court about whether any payments for repairs, maintenance, and real estate taxes on the San Felipe Residence should continue to be made after June 2024, and whether only one-third of such payments should be made until then." *Id.* ¶ 17. They also seek a declaration that "in the

event that any real estate taxes or expenses for maintenance for the San Felipe Residence are not timely paid by Anara, Trustees may, in their discretion, advance those costs and seek reimbursement from Anara." *Id.* ¶ 18.

Plaintiffs allege that pursuant to ¶ 6.2 of the Trust Agreement, Trustees are authorized to make distributions to the Beneficiaries to provide for their health, education, maintenance, "taking into account to the extent the Trustee determines, other income known by the Trustee to be reasonably available to the Beneficiary and taking into account the statutory obligation of the living parent of any minor beneficiary." *Id.* ¶ 19. Plaintiffs further allege that they have sent numerous communications to Defendants requesting information to determine the current needs and appropriate amount of distributions for the Beneficiaries, but "Defendants and their attorneys refuse to respond to basic requests for information." *Id.* ¶ 20. Plaintiffs request a declaration that they are not required to make distributions until such information is furnished to them. Plaintiffs also seek a declaration that they are not required personally to pay any fees related to the filing and prosecution of this lawsuit, pursuant to ¶ 12 of the Trust Agreement.

Plaintiffs seek the following specific declarations "about whether Trustees:"

(1) Are authorized to continue to pay costs associated with the Fairway Residence on a *pro rata* basis from the Trusts, including costs for property taxes, casualty insurance, maintenance, repairs[,] upkeep and replacement of tangible personal property and landscaping;

(2) With regard to maintenance of the San Felipe Residence:

   (a) [Are] not required to pay for any repairs, maintenance or real estate taxes without a prior written request that is supported by documentation as reasonably required by the Trustees;

   (b) May pay only one-third of repairs, maintenance, and real estate taxes on the San Felipe Residence until July 1, 2024;

   (c) May use their best business judgment in rejecting any request for payments;

5

    (d) Must cease payments for repairs, maintenance, and real estate taxes on the San Felipe Residence effective July 1, 2024; or in the alternative,

    (e) Any payment for upkeep, maintenance, taxes, insurance, or mortgage for the San Felipe Residence must be paid equally from all three Plaintiff Trusts.

(3) Are not under any duty to make trust distributions to, or for the benefit of a particular trust beneficiary, unless and until the Trustees, in their best business judgment, conclude that they have received sufficient information, including information on assets, income and expenses to make a determination about such distributions;

(4) Until sufficient information (as determined in Trustees' good-faith judgment) has been provided to Trustees to allow Trustees to use their best business judgment, Trustees will not breach their fiduciary duties or any terms of the Trust Agreement by refusing to make a distribution or payment;

(5) In the event that any real estate taxes or expenses for maintenance for the San Felipe Residence are not timely paid by Anara, Trustees may, in their discretion, advance those costs and seek reimbursement from Anara; and

[(6)][1] Are not required to personally pay any fees related to the administration of the Plaintiff Trusts and that they may, in their sole and conclusive best business judgment, pay any professional fees incurred in the administration of the Plaintiff Trusts out of the trust estates.

*Id.* ¶ 27.

Defendants move to dismiss the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 41. Plaintiffs have moved for summary judgment. ECF No. 44. In addition, both sides have filed motions to exclude expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). ECF Nos. 24, 32.

## II.   LEGAL STANDARD

The federal Declaratory Judgment Act, 28 US.C. § 2201, provides:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

---

[1] In the Second Amended Complaint, this item is labeled "(7)," which appears to be a typo.

further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

Section 2201 does not create an independent cause of action. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act, 28 U.S.C. § 2201, is procedural only, not substantive . . . ."). Instead, "the underlying cause of action which is thus actually litigated is the declaratory defendant's, not the declaratory plaintiff's." *Id.*; *see also Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 172 (5th Cir. 1990) ("The Act is designed to allow potential defendants in cases of actual and immediate controversy within the subject matter jurisdiction of the federal courts to petition the court for an early resolution of the parties['] rights and liabilities.").

For declaratory judgment cases, the Fifth Circuit instructs that district courts must take a three-step inquiry, outlined below:

> First, the court must determine whether the declaratory action is justiciable. Typically, this becomes a question of whether an "actual controversy" exists between the parties to the action. *See Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989). A court's finding that a controversy exists such that it has subject matter jurisdiction is a question of law that we review de novo. *See In re Canion (Randall & Blake, Inc. v. Evans)*, 196 F.3d 579, 584 (5th Cir.1999). Second, if it has jurisdiction, then the district court must resolve whether it has the "authority" to grant declaratory relief in the case presented. *See Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir.1993) ("Prior to determining whether the district court abused its discretion by failing to review the merits of this case, this Court must first determine whether the district court had authority to grant a declaratory judgment here."). Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action. *See id.* at 778 (recognizing a district court's vast discretion in the declaratory judgment context).

*Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

The Fifth Circuit has recognized that, "[a] controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Companies*, 876 F.2d at 27–28 (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)).

### III. ANALYSIS

Defendants move to dismiss under Rule 12(b)(1), arguing that there is no case or controversy alleged against the Beneficiaries or Anara individually. In the alternative, Defendants argue that the Court should decline to exercise jurisdiction in this declaratory judgment action or transfer the case to the Southern District of Texas, McAllen Division. For the reasons discussed below, the Court agrees that the Second Amended Complaint does not present a justiciable controversy, and as a result, does not reach Plaintiffs' Motion for Summary Judgment or the parties' challenges to expert witnesses.

In determining whether this declaratory action is justiciable, the Court must first decide whether an actual controversy exists between the parties. *See Orix Credit All.*, 212 F.3d at 895. "The declaratory judgment plaintiff must establish that this [actual controversy] requirement was satisfied at the time the complaint was filed—post-filing conduct is not relevant." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). The Second Amended Complaint includes six requested declarations; the Court will address each in turn.

The first declaration requested by Plaintiffs in the Second Amended Complaint—that the Plaintiffs are authorized to pay costs associated with the Fairway Residence on a *pro rata* basis from the Exempt Trusts, including costs for property taxes, casualty insurance, maintenance, repairs, upkeep and replacement of tangible personal property and landscaping—does not present

a justiciable controversy.  *See* Second Am. Compl. ¶ 27(1).  The Second Amended Complaint contains no factual allegations in support of this requested declaration; for example, there are no allegations that Defendants claim Plaintiffs are not authorized to pay costs associated with the Fairway Residence, or that Defendants have opposed the payment of such costs.  Instead, Plaintiffs seemingly seek a declaration from the Court that they are authorized to make payments that are expressly provided for under the terms of the Trust Agreement.  In the absence of any dispute regarding those payments or an interpretation of the Trust Agreement, such a declaration would be advisory.

The second set of requested declarations relate to the San Felipe Residence and Plaintiffs' ongoing obligations to pay for repairs and maintenance associated with the Residence.  *See id.* ¶ 27(2)(a)–(e).  Specifically, Plaintiffs request declarations that they are permitted to deny any request for repairs, maintenance, or real estate taxes without a prior written request with accompanying documentation; that they are permitted to pay only one-third of repairs, maintenance, and taxes for the Residence until July 1, 2024; that they may use their best judgment in rejecting any request for payments; and finally, that they may cease making all payments associated with the Residence after July 1, 2024, or in the alternative, any such payments shall by paid equally from the three Exempt Trusts.  *Id.*  Plaintiffs' fifth requested declaration likewise asks for a declaration that, should Anara not pay taxes or maintenance costs for the San Felipe Residence, Plaintiffs may advance those costs and seek reimbursement from Anara.  *Id.* ¶ 27(5).

As with Plaintiffs' requested declaration relating to the Fairway Residence, there are no factual allegations in the Second Amended Complaint in support of these requested declarations, and accordingly, Plaintiff has not alleged any controversy arising out of the San Felipe

9

Residence.  For instance, there is nothing in the Second Amended Complaint explaining the significance of the July 1, 2024, date, why the Plaintiffs' obligations might change on that date, or whether Defendants oppose any such cessation of payments.  Nor are there any allegations that Plaintiffs have denied any of Defendants' requests for payment or that Defendants have challenged such denials.  As such, there appears to be no actual controversy between the parties relating to the San Felipe Residence based on Plaintiffs' own allegations in the Second Amended Complaint.

In response to Defendants' Motion to Dismiss, Plaintiffs provide additional allegations in support of their requested declarations, including clarification that July 1, 2024, is when the minor Beneficiary, ASF, reaches the age of majority.  Plaintiffs further contend that they have been paying the real estate taxes and maintenance costs for the San Felipe Residence, but that after all Beneficiaries reach the age of majority, Plaintiffs intend to cease making any payments in connection with the San Felipe Residence.  Resp. (ECF No. 55) at 16–17.  At the same time, however, Plaintiffs reference Anara's "financial irresponsibility," and to avoid tax liens being placed on a trust asset, seek a declaration that they may pay to maintain the San Felipe Residence, may pay the property taxes, and may then recover from Anara any trust funds so expended.  *Id.* at 17.  During the hearing, Plaintiffs further argued that the Settlement Agreement—and specifically, the provision in the Settlement Agreement providing that Plaintiffs shall not unreasonably withhold consent for payment for any repairs to the San Felipe Residence for which payment or reimbursement is sought—is inapplicable.

Such additional allegations and arguments do not create an actual controversy capable of conferring jurisdiction.  As stated, none these allegations are in the pleadings, and more importantly, there is no indication that Defendants actually agree, disagree, or take any position

10

regarding Plaintiffs' plans and decisions as to the Exempt Trusts. Plaintiffs' requested declarations are also contingent on future acts that may not occur, such as taxes not being paid or Defendants not providing adequate documentation for requested repairs. As such, Plaintiffs have not presented a dispute that is not hypothetical, conjectural, or conditional, and thus there is no current actual controversy relating to the San Felipe Residence to be litigated and decided. *See Rowan Companies*, 876 F.2d at 27–28.

The remainder of the Plaintiffs' requested declarations all purport to arise out of the same factual allegations, namely that Plaintiffs have requested information and documentation from Defendants to determine the Beneficiaries' current needs, so as to calculate an appropriate distribution amount, but that the information and documentation has not been provided. Second Am. Compl. ¶¶ 19–20. As a result, Plaintiffs seek a declaration that they are authorized to cease distributions until, in their discretion and using their best business judgment, they receive sufficient information to make a determination about distributions, and shall not be in breach of their fiduciary duties or any terms of the Trust Agreement by refusing to make a distribution. *Id.* ¶ 27(3)–(4). Plaintiffs further seek a declaration that they are entitled to reimburse themselves from the Exempt Trusts for expenses and fees incurred in the Trusts' administration. *Id.* ¶ 27[(6)].

The Second Amended Complaint alleges only that Defendants have not provided information in response to Plaintiffs' requests; it does not allege that Defendants stated a disagreement with or objection to Plaintiffs' plans to cease distributions until such information is received. The Trust Agreement provides that the Plaintiffs as Co-Trustees are permitted to make distributions "in the Trustee's judgment" for the benefit of Beneficiaries. *See* Trust Agreement ¶ 6.2. Further, during the hearing, Defendants agreed that Plaintiffs, in exercising their judgment

11

as Co-Trustees, are empowered under the Trust Agreement to cease distribution payments entirely.  As such, there is no live dispute that requires Court intervention to resolve; Plaintiffs want to stop making distribution payments until they receive certain information, and Defendants have not raised any disagreement that they are entitled to do so.  Similarly, there is no indication that Defendants have disputed that Plaintiffs are permitted under the Trust Agreement to reimburse themselves for expenses for administering the Trusts, and thus issuing a declaration to that effect would be advisory.  *See id.* ¶ 12.4 ("[E]ach Trustee shall be entitled to reimbursement from the trust estate for any liability, whether in contract or in tort, incurred in the administration of the trust estate in accordance with the provisions hereof . . . . ").

Moreover, a declaration from the Court authorizing Plaintiffs to cease distributions would not prevent or resolve a future dispute from the Beneficiaries with the Trustees about distributions or breach of fiduciary duty, because to be actionable under the Trust Agreement, such a claim would have to include allegations that the Trustees' conduct was fraudulent, or constituted bad faith or gross negligence.  *Id.* ¶¶ 12.5, 12.6.  It would be improper to make any pronouncements about Plaintiffs' liability under the Trust Agreement or for breach of fiduciary duty in the absence of actual, non-speculative allegations *from Defendants* of any alleged wrongdoing.  *See Collin Cty.*, 915 F.2d at 171 ("[I]t is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action . . . .").

In sum, Plaintiffs' requested declarations all rest on the same doomed assumption: that the Defendants will and do object to Plaintiffs' decisions regarding the Exempt Trusts, be it payments or non-payments for the Residences, the cessation of payments to Beneficiaries, or Plaintiffs reimbursing themselves for expenses incurred in the Exempt Trusts' administration.  But the Declaratory Judgment Act requires more than assumed disagreement to create a

justiciable action; Plaintiffs have the burden to show the existence of an actual and immediate controversy. *See Collin Cty.*, 915 F.2d at 172. Here, the lack of any allegations of Defendants' disagreement is dispositive; the Court concludes that there is no justiciable controversy, and accordingly, no subject matter jurisdiction under the Declaratory Judgment Act.

In the alternative, even assuming that a justiciable controversy exists, the Court exercises its discretion to dismiss this declaratory judgment action in light of the mandatory mediation provision in the Settlement Agreement, which requires that any disputes arising out of the Settlement Agreement shall be mediated. *See* Settlement Agreement ¶ 22. The Court notes that Plaintiffs and Anara, in her capacity as next friend to the Beneficiaries, were signatories to the Settlement Agreement, which in turn appears to have modified the rights and obligations of the parties under the Trust Agreement. Thus, even if the Second Amended Complaint presented a justiciable controversy, in the alternative the Court declines to exercise jurisdiction over this declaratory judgment action pursuant to the parties' agreement to mediate their disputes.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Plaintiffs' declaratory judgment claims are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED**.

December 20, 2023.

BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE